EDWARD ARENDS, Appellant, v. SWEETWATER
MINING CO., a Corporation, Respondent.

No. 3724

March 19, 1956.                294 P.2d 914.

(Rehearing denied May 25, 1956.)

*Walter Rowson*, of Reno, for Appellant.

*John P. Thatcher*, of Reno, for Respondent.

## OPINION

By the Court, MERRILL, C. J.:

This is an action brought by appellant as plaintiff to recover from defendant corporation the value of services rendered and money furnished on its behalf. Defendant denies corporate liability under any circumstances. This issue we do not reach and for the purposes of this opinion may assume that under proper circumstances the properties represented by defendant corporation would become liable. In any event, however, corporate liability was not to arise until the occurring of certain eventualities which have not in fact occurred. The question upon this appeal, as we view it, is whether such conditions to liability have been waived by defendant or whether they continue effective and thus preclude recovery in this action. The trial court sitting without a jury held for defendant corporation, and plaintiff has taken this appeal from judgment. Essentially the question is one of fact: whether the record will support a determination by the trial court (not expressed but implicit in its findings and judgment), that under the circumstances the defendant corporation may not be held to have waived the conditions upon which its liability would arise.

The case is founded in contract. If defendant corporation is to be held liable it must be on the basis of an implied contract to make compensation for benefits received. The terms of such contract must in turn be based on provisions of express agreements between certain interested persons individually, which prescribed the rights and duties of those persons in relation to the properties standing in the name of defendant corporation.

Plaintiff Arends, the owner of a controlling interest in certain mining claims, in 1941 entered into an agreement with C. E. Leitzell whereby Leitzell was to furnish operating capital in exchange for a half interest in the

mining property. It was agreed that title to the mining claims should be held in the name of the defendant corporation. The agreed initial sums were paid by Leitzell. Thereafter, as further capital was required for operations and for the acquisition of additional properties, additional sums were furnished until Leitzell eventually had paid over $40,000, substantially more than had been originally contemplated.

In 1942 Leitzell notified Arends that he had already paid more than had been anticipated and should be considered to have paid in full for his one-half interest in the properties. From thenceforth, he insisted, the interested parties should share in the expenses of the operation in proportion to their interests. Thereafter advances were made by both Leitzell and Arends. The greater portion of Arends' contributions were by way of labor through the furnishing of services as superintendent of operations, caretaker, and in the performance of assessment work.

In 1946 Leitzell died and certain heirs succeeded to his interests, including his son, Paul Leitzell. Thereafter the Leitzell heirs recognized their obligation to contribute one-half of the expense of the operations. Certain payments were made by them in this respect, but at the time suit was brought a balance remained owing upon this account. A tender of payment was made by them, but was rejected by Arends as insufficient to discharge their obligation in full.

It is apparent, therefore, that we are faced with two different obligations: (1) the obligation of the interested parties to contribute their proportionate share to the expenses of operation; (2) an obligation by or on behalf of the corporation to repay such contributions.

As to the former it was clearly not a corporate liability. The agreement was between and binding upon the interested parties. The corporation's position was that of beneficiary rather than obligor.

As to the latter it is clear from the testimony of all

concerned, including Arends himself, that they were all operating with a common understanding that all contributions to operating expense were to be regarded as advances to be repaid before division of profits but that payment back of such advances was not to be made unless and until the mine became productive either through profitable operation, sale, or lease.

In 1950 the defendant corporation took the action which precipitated this suit. Over Arends' objection his employment was terminated and the mine was leased to one Eric Flodine by action of the defendant's board of directors. The lease proved wholly unproductive. No money was ever received by the defendant from it. The generally recognized condition precedent to any obligation to repay advances has not been met.

Arends contends, however, that it was further agreed that the property would not be sold or leased unless a substantial down payment was received, sufficient to pay off all advances made on behalf of the corporation. He contends that the corporate action in executing the Flodine lease was a violation of this agreement in that it called for no down payment. He contends that this breach of contract relieved him from further need to forbear from demanding payment for his advances; that it amounted to a waiver on the part of the defendant of any condition precedent to liability since by its own conduct it had made it impossible for such condition to be met.

Whether breach of such an agreement would constitute a waiver, we need not decide. As to this contention of Arends our task is simply one of ascertaining whether the record can be said to establish beyond question that such an agreement existed and thus compel a factual determination of such existence. In our view it cannot.

There is no proof of an express corporate agreement with reference to down payment, although there is proof that in respect to a past effort to sell or lease, corporate authority to negotiate had been limited to an agreement providing for a $25,000 down payment.

Bearing upon a possible implied contract by the corporation there was testimony as to an oral agreement or understanding between the interested parties. Arends testified that his agreement with C. E. Leitzell, at the time that the arrangement for sharing of expenses was agreed upon, was to the effect that advances were "to come back to us from the sale of the property and there was to be enough cash to take care of it." Further, that "it was always our understanding that when that property was disposed of, either by lease or by sale, that that money had to be advanced to take care of these advances that were made by these individuals who had carried this thing on for the corporation." These vague and indefinite statements are the only testimony which has been directed to our attention in support of the existence of the agreement for which Arends contends.

The only other testimony to which our attention has been directed bearing upon such an agreement is that of Paul Leitzell. He testified that all concerned were anxious to be able to sell or lease the property with a substantial down payment; that Arends had always insisted upon it; that the others had certainly had no objection. Then, in response to a question whether he had not consistently agreed with Arends that any lease or sale of the property should be conditioned upon a substantial down payment he answered, "If we could get it, yes."

There is, then, evidence that as between the stockholders the extent of any understanding relative to a down payment was that such payment should be secured if it could be got. There is no proof that at the time of the execution of the Flodine lease a down payment could have been secured. The evidence as to the history of the property would indicate quite the contrary.

Reason supports Leitzell's construction of the understanding. Should the mine prove to be wholly unproductive under Arends' development program (as did ultimately prove to be the case), a down payment might well be difficult to secure. Under Arends' contention any lease of the property for the purpose of securing the

benefit of further development (or, indeed, of any constructive operation of the properties), might well become impossible. A determination that a corporation has impliedly bound itself to such a proposition beyond control of its board of directors might well be held to require more definite proof than is to be found in this record.

In any event it cannot be denied that the record supports a rejection of the proposition that an agreement existed, binding upon the corporation, that, regardless of the circumstances, its properties would never be sold or leased save upon receipt of a substantial down payment. Under the common understanding between the interested parties, then, any corporate liability to repay advances (if such obligation existed at all), must await the receipt of such sums from operation, sale or lease of the properties.

Arends has asserted error of the trial court in many specific respects and, in support of his contention that the judgment is contrary to the evidence, has dealt with many propositions of law not discussed in this opinion. Upon these matters we have either accepted Arends' position for the purpose of our decision or feel that a determination would be immaterial in the light of our opinion. In each instance the factual record makes it unnecessary to deal with issues of law.

Affirmed with costs.

BADT and EATHER, JJ., concur.